Atkinson, J.,
delivered the opinion of the court:
This suit is based upon a written contract between claimants and the United States, wherein claimants agreed to build six steel dump barges for the sum of $101,400. The contract is dated July 12, 1906, was signed and executed by claimants August 17,1906, and by Theodore P. Shonts, chairman of the Isthmian Canal Commission, August 28, 1906. The contract provides for the construction of six steel dump barges in accordance with specifications in circular 310 C of the Isthmian Canal Commission, dated May 29, 1906, with such modifications as are shown on drawing No. 2105, dated June 7,1906, and revised July 27,1906, outlined by letter of plaintiffs of July 27, 1906, subject to such amendments as provided by correspondence between the parties in interest, all of which are made a part of the contract. It further provides for the inspection of the barges by agents of the defendants, and also for the payment of liquidated damages *476 at the rate of $15 per day for failure to construct and deliver all of the barges to defendants on or before May 5, 1907, at a point to be edsignated by them. The specifications contained in circular No. 310 C provide the manner in which proposals for the construction of the barges shall be made, their size, weight, capacity, guaranty for faithful performance of the requirements of the contract, inspection, time of delivery, etc. The letter of claimants of July 27, 1906, together with a blueprint, No. 2105, which contains measurements, weights, etc., of the barges, explanatory of claimants’ bid for the construction of the same, are all set forth in the petition.
The litigation in this case resulted from what seems to have been an apparent misunderstanding by the agents of the defendants as to certain changes in the terms of an original advertisement for bids for the construction of the said six steel dump barges of a specified size, strength, and weight, to be used by the defendants in the construction of the Isthmian Canal, claimants having agreed to construct said barges under the specifications contained in the original advertisement for the sum of $148,400; but said bid, with all others, was rejected for the reason that they were believed by the agents of the defendants to be excessive. Under a subsequent advertisement for bids claimants submitted another offer to construct the six dump barges of the same dimensions, but of lighter material and weight, for the sum of $101,400, which latter bid was accepted by defendants, though it is claimed by them that it was done through a misconception and a misunderstanding of the terms of the bid, and a contract thereunder was duly made and signed by claimants and the agents and representatives of the defendants. After the execution of the contract, defendants made an examination of the materials to be used by claimants, as set out by them in their proposal and bid, and found that they were different in size and weight from those described in their circular letter and specifications 310 C, the principal component parts or members having been reduced in strength as well as in weight, durability, size, and power of resistance, and thereupon the same were disapproved and rejected by *477 the engineer officers of the defendants. Demand was thereupon made that claimants should adhere to the original specifications, which they refused to do, and as a result of such refusal the defendants abrogated their contract, gave the construction of the said six barges to the Newport News Shipbuilding Company, for the sum of $149,000; and for the failure of defendants to comply with the provisions of the contract duly made and executed by them, claimants bring this suit to recover damages for breach of contract in the sum of $30,000, they having tendered performance, and claim that they have been at all times ready, willing, and able to execute the work in accordance with the provisions of the contract.
It is argued on behalf of the claimants that the contract is clear and unambiguous in terms, and that the same rules must be applied as to reciprocal rights and obligations (subject only to certain limitations in respect of agents exceeding their authority), between the United States and an individual, in respect of contracts between them, as are applied to contracts between individual citizens. In other words, the United States must stand upon the same footing as an individual, and therefore they can not arbitrarily annul formally executed contracts. (Smoot v. United States, 15 Wall., 36, Chicago and N. W. Ry. v. United States, 104 U. S., 680.)
It was known to claimants that defendants desired six steel barges at a cost not to exceed $90,000; that the lowest bid offered under the first advertisement was $148,400, which was claimants’ own bid and which bid was rejected, because it was believed to be excessive. Claimants thereupon submitted a proposition to construct barges of the same dimensions, but of a lighter weight and materials, as the findings and the contract show, for $101,400. At the opening of the proposals, June 8, 1906, when claimants’ bid, which was the lowest, was accepted, the bids were $101,400, $111,000, $149,-000, $136,500, $156,000, $111,400, $189,000, and $300,000. The very fact of this great difference in the amounts of the bids, taken in connection with claimants’ former bid of $148,400, it would seem to us, was sufficient in itself to have put the de *478 fendants on inquiry. Attention was called to this fact by claimants in their letter of July 27, 1906 (Finding IY), to the defendants’ division engineer, wherein attention was called to the weight of the barges proposed by the bid of a Brooklyn, N. Y., firm for $111,000, as compared with the weight of the barges which claimants proposed to build, which letter of claimants revealed the fact that the two firms were evidently bidding1 on a different character of barges. The attention of defendants was further called to this same fact by a conspicuous note on a large blueprint prepared by claimants, which is attached to and is made a part of the contract, which note gives the net weight of the barges, and this weight was to be distributed in such manner as the defendants might direct. It is apparent, therefore, if the printed specifications are to govern, the letter of July 27, sufra, and the blueprint No. 2105, will have to be entirely ignored. The wording of Article I of the contract, we think, disposes of this conflict. It provides that the six steel dump barges are to be constructed “ in accordance with specifications contained in circular 310 C of the Isthmian Canal Commission, dated May 29, 1906, with such modifications as are shown on drawing No. 2105, dated June 7, 1906, and revised July 27, 1906, outlined in letter of Ellicott Machine Company, dated July 27, 1906, * * * copy of which specifications, drawings, letters, and sketch are attached hereto and form part of this contract.”
When a contract is duly signed prior negotiations become merged in it, and to ascertain the intention of the parties thereto we must look to the contract alone. If the parties to a contract have reduced it to writing, they must intend such writing to be the repository of their common intentions. It merges all prior and contemporaneous negotiations. Extrinsic evidence is inadmissible in an action on a written contract to show the understanding of the meaning and effect of such contract entertained by one or both of the parties thereto when the contract was entered into. (Page on Contracts, secs.'86, 1189, 1193.)
If a party to a contract is able to but does not read it, then he is negligent, and can not plead this negligence in his de *479 fense. “ Some courts lay it down as a broad principle that one who enters into a contract under mistake of fact due to his own negligence, concerning which he could with reasonable diligence have learned the truth, can not have relief.” (Page on Contracts, sec. 80.) “A mistake as to a matter of fact to warrant relief in equity must be material, and the fact must be such that it animated and controlled the conduct of the party. It must go to the essence of the object in view and not be merely incidental. The court must be satisfied that but for the mistake the complainant would not have assumed the obligation from which he seeks to be relieved.” (Kerr on Mistake and Fraud, 408. Grymes v. Sanders, 93 U. S., 55; Barker v. Ry., 65 Fed., 460; Northern Assurance Co. v. G. V. Building Assn., 183 U. S., 308.)
Page on Contracts, section 79, further says:
“Every sane person is held to intend the legal consequences of his voluntary acts. Accordingly, if a person of legal capacity and not acting under fraud, misrepresentation, duress, or undue influence goes through the outward form of binding himself by contract, he can not avoid liability thereon by claiming that unknown to the adversary party he made his offer or acceptance under mistake of fact, and that he did not intend to make such offer. A mistake of this kind (i. e., mistaké as to the subject-matter of the contract) is generally inoperative, because parties are bound by what they say and do, and the courts will not consider what they think and believe, in the event of a difference between the two. If an article bought does not possess the qualities attributed to it by the purchaser the case is governed by the maxim caveat emptor, unless the seller has caused the mistake by his fraud or unless there has been a warranty.”
Does the case at bar come within the cases cited? We hold that it does. The findings fail to reveal misrepresentation and fraud by claimants, but reveal a degree of negligence on the part of the agents of the defendants from which they can not be allowed to extricate themselves by the abrogation of a duly executed contract in order to shield themselves from responsibility.
In consideration of all of the facts in the case, and in view of the difference between the cost of doing certain work and what claimants were to receive for it, making reasonable deduction of the less time engaged and release from the care, *480 cost, risk and responsibility attending a full execution of the contract, the court decides that claimants are entitled to recover as profits the sum of $10,000, and accordingly judgment against the defendants for said amount is hereby ordered.